*The Law Offices of*
***GRUBER SCHWARTZ & POSNOCK, LLP***
Attorney ID 024001983
99 Corbett Way
Suite 203
Eatontown, New Jersey 07724
(732)544-1460
Attorneys for Plaintiffs

| | |
|---|---|
| DAVID HERRERA and GIPSY HERRERA, | : UNITED STATES DISTRICT COURT<br>: DISTRICT OF NEW JERSEY |
| Plaintiff, | : |
| vs. | : |
| STATE TROOPER D. M. O'KEEFE (Trooper No. 6236)(Individually); STATE TROOPER KEMNAH (Trooper No. 7311)(Individually); STATE TROOPER SGT. PLA (Trooper No. 5842)(Individually); STATE TROOPER SGT. MOTT (Trooper No. 7135)(Individually), METLIFE SECURITY OFFICER GLEN KOCH (Individually) , METLIFE SECURITY OFFICER 971 (Individually) ,  THE NEW JERSEY SPORTS AND EXPOSITION AUTHORITY; METLIFE STADIUM, and JOHN DOES 1-10, | : Civil Action<br>:<br>:<br>:<br>: **COMPLAINT AND**<br>: **JURY DEMAND**<br>: |
| Defendants. | : |

Plaintiffs David Herrera and Gipsy Herrera, by way of complaint against the defendants herein, allege as follows:

## NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages based upon multiple violations of the Plaintiffs' constitutional and civil rights under the Federal Civil Rights Act (42 U.S.C. § 1983), the New Jersey Civil Rights Act (N.J.S.A. 10:6-1 et . seq.), and for violations of

The New Jersey Law Against Discrimination (N.J.S.A. 10:5-12) occurring on September 6, 2019.

## JURISDICTION AND VENUE

2. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1345. This court has supplemental jurisdiction over the plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

3. The venue in this action is proper under 28 U.S.C. §1391(b)(2) because all of the defendants reside in or are located in the District of New Jersey and because all events took place in the District of New Jersey.

## PARTIES

4. Plaintiffs David Herrera and Gipsy Herrera are citizens of the United States, residing in the Queens, New York.

5. Plaintiff David Herrera's race is Hispanic, and he is of Mexican descent. David Herrera is a partially disabled veteran of the US Armed Forces.

6. Plaintiff Gipsy Herrera's race is Hispanic, and she is of Mexican descent.

7. Defendant State Trooper Police Officer D.M. O'Keefe was a duly appointed police officer of the State of New Jersey. At all relevant times herein, Trooper O'Keefe acted under the color of state law. Defendant O'Keefe is sued in his individual capacity.

8. Defendant State Trooper Kemnah was a duly appointed police officer of the State of New Jersey. At all relevant times herein, Trooper Kemnah acted under the color of state law. Defendant Trooper Kemnah is sued in his individual capacity.

9. Defendant State Trooper Sgt. Pla (Trooper No. 5842) was a duly appointed police officer of the State of New Jersey. At all relevant times herein, Trooper Pla acted under the color of state law. Trooper Pla is sued in his individual capacity.

10. Defendant State Trooper Sgt. Mott (Trooper No. 7135) was a duly appointed police officer of the State of New Jersey. At all relevant times herein, Trooper Mott acted under the color of state law. Trooper Mott is sued in his individual capacity.

11. The New Jersey Sports and Exposition Authority ("NJSEA") provides in-house security, emergency medical services, and fire protection to the Meadowlands Sports Complex, including MetLife Stadium.

12. Metlife Stadium is a place of public accommodation within the meaning of N.J.S.A. 10:5-5l.

13. Metlife Security Guard Glen Koch was at all relevant times herein an employee of MetLife. At all relevant times herein, defendant Koch acted as a security guard on behalf of and under the supervision of the NJSEA. At all relevant times herein, defendant Koch served and carried out a public function and operated within a nexus with the state police defendants such that defendant Koch acted under color of state law.

14. Metlife Security Guard number 971, whose true identity is unknown, was at all relevant times herein an employee of MetLife. At all relevant times herein, defendant Security Guard number 971 acted as a security guard on behalf of and under the supervision of the NJSEA. At all relevant times herein, defendant Security Guard number 971 served and carried out a public function and operated within a nexus with the state police defendants such that defendant Security Guard number 971 acted under color of state law.

15. Defendants John Does 1-10 are Metlife Security Personnel and New Jersey State Troopers defendants whose identity is not known to the plaintiffs at this time. John Does 1-10 acted under color of state law and participated in the unlawful conduct alleged herein below.

## FACTS COMMON TO ALL COUNTS

16.     On September 6, 2019, the plaintiffs were business invitees on the premises of MetLife Stadium, where a soccer match was taking place. The teams playing were the Mexican National Team and Team USA . Plaintiffs had rented a van and were there with a group of 15 family members, including small children, to support the Mexican national team.

17.     While peacefully watching the match, other patrons, all of them Caucasian, began to relentlessly berate and harass plaintiffs and other nearby Hispanic soccer fans on the basis of race and national origin. Without provocation, these patrons told plaintiffs to "go back to your country," screamed "build that wall" "go home Mexicans" "fuck all these Mexicans" "pay your taxes," and similar insults. The children present with plaintiffs became very upset.

18.     Plaintiff David Herrera called for the men yelling racial and ethnic slurs to stop.

19.     MetLife Security Guard Glen Koch, who was nearby during the abusive behavior by the Caucasian patrons, told plaintiff David Herrera that he was being kicked out of the stadium because one of the Caucasian men yelling racial and ethnic slurs said that plaintiff David Herrera had yelled at him. This was untrue.

20.     Plaintiffs, as well as other patrons, told MetLife Security Guard Koch that Plaintiff David Herrera had done nothing wrong, and that instead their group had been subject to racial and ethnic slurs by the Caucasian men sitting in front of them.

21.     Nonetheless, Metlife Security Guard Koch said that plaintiff David Herrera was required to leave the stadium. Family and friends continued to protest that plaintiff David Herrera had done nothing wrong, while at the same time the same group of Caucasian men who had been harassing and threatening the plaintiffs' family continued with their racist and ethnic slurs, with no action taken by security to deal with what was an openly hostile environment.

22.	Plaintiff David Herrera continued to request a valid explanation for the demand that he leave the premises. Not only did the MetLife Security Guard refuse to give a reason, he called for backup. A group of New Jersey State Troopers then responded.

23.	Plaintiff David Herrera told the State Troopers that he had done nothing wrong. In response, they suddenly and violently slammed plaintiff David Herrera into the seat in front of him, chipping his tooth.

24.	The State Troopers then brutally threw plaintiff David Herrera onto the concrete floor of the stadium, while his family watched, causing his 9 year old son to cry hysterically.

25.	Plaintiff David Herrera, who had a pre-existing spinal injury, told the State Troopers that they were causing him severe pain. Ignoring his pleas - indeed telling him that he was faking pain, defendants hogtied plaintiff David Herrera's hands behind his back and arrested him.

26.	When plaintiff Gipsy Herrera complained about the treatment of her uncle, plaintiff David Herrera, she was told "just shut your mouth and watch the game or you'll get dragged out next."

27.	When plaintiff Gipsy Herrera continued to protest, she was also arrested. At no time did she touch or assault anyone or interfere with the arrest of her uncle. She was simply asking questions.

28.	Plaintiff David Herrera was dragged on the ground out of the stadium, choked, and assaulted. He was also told "You fucking Mexican, you're not hurting and you're probably not even a veteran. You're a faker. He's probably not even legal."

29.	As a result of the assault, plaintiff David Herrera suffered a chipped tooth, aggravation of a pre-existing back injury, severe bruising, as well as stinging and indelible

humiliation.

30. As a result of the assault, plaintiff Gipsy Herrera suffered severe bruising to her arms, as well as the same type and degree of humiliation that was visited on her uncle by the defendants .

31. While jailed, plaintiff Gipsy Herrera was denied the use of a bathroom, despite repeated requests, and despite telling the officers that she was menstruating. As a result, she urinated on herself and bled through her clothing.

### CAUSES OF ACTION

### COUNT I

### EXCESSIVE FORCE IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND UNDER THE NEW JERSEY CONSTITUTION AND NEW JERSEY CIVIL RIGHTS ACT

32. Plaintiffs repeat and reallege all of the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

33. The aforementioned actions of the defendants constitute the use of excessive force upon the persons of the plaintiffs.

34. As a direct and proximate result of the above referenced unlawful, malicious and gratuitous abuse of plaintiffs by each of the defendants, committed under color of state law, plaintiffs sustained harm and were deprived of their right to be secure in their persons against the unreasonable seizure of their persons in violation of the fourth and fourteenth amendments of the United States Constitution, made actionable through 42 U.S.C. § 1983.

35. The acts alleged herein constitute the use of excessive force and an unlawful seizure of the person of the plaintiffs in violation of the New Jersey Civil Rights Act (N.J.S.A.

10: 6-1); the New Jersey Constitution, including (a) the right to liberty protected by the New Jersey Constitution, Art. I, P. 1, and (b) their right to be secure as a person against unreasonable searches and seizures secured to them by the New Jersey Constitution, Art. I, P. 7.

36. As a direct and proximate result of the unlawful conduct of defendants as set forth above, plaintiffs suffered expenses and will suffer additional special damages in the future in an amount which cannot yet be determined.

37. By reason of the above, plaintiffs were permanently injured, suffered great mental anguish and were deprived of their constitutional rights as described above.

**WHEREFORE**, plaintiffs David Herrera and Gipsy Herrera demand judgment against each of the defendants, with compensatory and punitive damages, attorney's fees, interest and cost of suits incurred and for any such further relief as the court deems proper and just.

## COUNT II

### FALSE ARREST UNDER 42 U.S.C. § 1983 and N.J.S.A. 10:6-1, et seq.

38. Plaintiffs repeat and reallege all of the allegations set forth in paragraphs 1 through 37 as if fully set forth herein.

39. At no time during the incident did the plaintiffs cause public inconvenience, annoyance and alarm.

40. At no time during the incident did the plaintiffs resist arrest.

41. At no time during the incident did the plaintiffs obstruct law enforcement.

42. There was no probable cause to arrest the plaintiffs.

43. As set forth herein above, the arrest of plaintiffs was motivated by animus toward their race and national origin.

**WHEREFORE**, plaintiffs demand judgment against the defendants with compensatory

and punitive damages, attorney's fees, interest and cost of suits incurred and for any such further relief as the court deems proper and just.

## COUNT III

### VIOLATIONS OF THE NEW JERSEY LAW AGAINST DISCRIMINATION

44. Plaintiffs repeat and reallege all of the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

45. The MetLife Stadium is a place of public accommodation within the meaning of the New Jersey Law Against Discrimination.

46. Defendants knew or should have known that they created a hostile environment based on the plaintiffs' race and national origin.

47. Defendants permitted Caucasian patrons at the soccer match to create a hostile environment for the plaintiffs based on the plaintiffs' race and national origin.

48. Defendants engaged in disparate treatment of the plaintiffs in violation of their rights under the New Jersey Law Against Discrimination.

**WHEREFORE**, plaintiffs demand judgment against the defendants with compensatory and punitive damages, attorney's fees, interest and cost of suit incurred and for any such further relief as the court deems proper and just.

## COUNT IV

### (PUNITIVE DAMAGES AS AGAINST ALL INDIVIDUAL DEFENDANTS)

49. Plaintiffs repeat and reallege all of the allegations set forth in paragraphs 1 through 48 as if fully set forth herein.

50. The actions of the defendants as alleged herein above were intentional, wanton and were in willful disregard for the rights and personal integrity of the plaintiffs, were

undertaken with actual malice, and were outrageous. Accordingly, plaintiffs are entitled to and hereby demand the payment of punitive damages as against all defendants.

**WHEREFORE**, plaintiffs demand judgment against the defendants for punitive damages.

## COUNT V

## (VICARIOUS LIABILITY)

51. Plaintiffs repeat and reallege all of the allegations set forth in paragraphs 1 through 50 as if fully set forth herein.

52. Where applicable, MetLife Stadium and/or the NJSEA were the employers of defendant Glen Koch, Metlife Security Guard 971, and John Does 1-10. As the employer of these individual defendants, NJSEA and MetLife Stadium, are legally responsible for and liable to the plaintiffs for all of the unlawful conduct undertaken by the defendant employees, under the doctrine of vicarious liability and/or *respondeat superior* as such conduct violates the New Jersey Law Against Discrimination.

**WHEREFORE**, plaintiffs demand judgment, jointly and severally, against defendants NJSEA and MetLife Stadium for compensatory damages, economic damages, attorney fees, together with the cost of suit.

## COUNT VI

## (JOINT AND SEVERAL LIABILITY)

53. Plaintiffs repeat and reallege all of the allegations set forth in paragraphs 1 through 52 as if fully set forth herein.

54. Each and all of the defendants are liable to the plaintiffs jointly and severally.

**WHEREFORE**, plaintiffs demand judgment, jointly and severally, against each and all

defendants named herein for compensatory damages, and economic damages, together with the cost of suit.

## COUNT VII

### (STATUTORY ATTORNEY FEES AND COSTS UNDER 42 U.S.C. 1988; THE NEW JERSEY CIVIL RIGHTS ACT, and UNDER THE NEW JERSEY LAW AGAINST DISCRIMINATION)

55. Plaintiffs repeat and reallege all of the allegations set forth in paragraphs 1 through 54 as if fully set forth herein.

56. Plaintiffs are entitled to and hereby demand the payment of Statutory attorneys fees and costs under 42 U.S.C. §1988, under the New Jersey Civil Rights Act and under N.J.S.A. 10:5-27.1, as the prevailing party on all such claims and causes of action brought under any and all federal causes of action, all claims under the New Jersey Civil Rights Act, and under the New Jersey Law Against Discrimination.

**WHEREFORE**, the Plaintiffs demand judgment, jointly and severally, against each and all defendants named herein for statutory attorney fees and costs of suit.

## DEMAND FOR JURY

Plaintiffs demand a jury as to all triable issues.

## RESERVATION OF RIGHTS

Plaintiffs reserve their right to amend this Complaint to assert any additional claims or to name any additional parties which further investigation reveals to be appropriate.

>                GRUBER, SCHWARTZ & POSNOCK, LLP
>                Attorneys for Plaintiffs
>
>                David A. Schwartz
>                _____
>                DAVID A. SCHWARTZ

Dated: August 30, 2021